## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | |
|---|---|
| JACKIE DEWAYNE BLAKEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 10-4082-CV-C-FJG-P ) |
| DAVE DORMIRE, et al., | ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 106) AND DISMISSING CASE**

Plaintiff, who is incarcerated at the Jefferson City Correctional Center (JCCC) in Jefferson City, Missouri, has filed pro se this civil action pursuant to 42 U.S.C. § 1983. Currently pending before the Court is defendants' motion for summary judgment. (Doc. No. 106). Defendants Jay Cassady[1], David Corum, Dave Dormire, Raina Martin[2], Richard Martin, Debra Reed, and Arthur Woods are the remaining defendants in this case. Plaintiff alleges that his cellmate, Donnell Brandon, committed the following acts against him: assault, battery, sexual assault, verbal assault and threats, rape, intentional infliction of emotional distress, and false imprisonment. Plaintiff asserts that, against prison regulations, Brandon, a general population inmate, was housed with plaintiff, a protective custody inmate, and that Brandon had a known history of raping other inmates. Plaintiff claims that defendants knew of the threat that Brandon posed to plaintiff but deliberately disregarded it and housed the two together in violation of plaintiff's Eighth Amendment right to be

---

[1] Jay Cassady's name is incorrectly listed as Jay Cassidy. The Clerk of the Court will be directed to change the name of defendant Jay Cassidy to Jay Cassady.

[2] Raina Martin's name is incorrectly listed as Reana Martin. The Clerk of the Court will be directed to change the name of defendant Reana Martin to Raina Martin.

free from cruel and unusual punishment.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), a movant is entitled to summary judgment on a claim only if he has made a showing that "there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." See generally Van Wyhe v. Reisch, 581 F.3d 639, 648 (8th Cir. 2009), cert. denied, 581 F.3d 639 (2010); Mason v. Correctional Medical Services, Inc., 559 F.3d 880, 884-85 (8th Cir. 2009). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Recio v. Creighton University, 521 F.3d 934, 938 (8th Cir. 2008) (citation omitted).

The inquiry performed is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2); Cook v. City of Bella Villa, 582 F.3d 840, 848 (8th Cir. 2009) (rehearing en banc denied).

## UNCONTROVERTED FACTS

Plaintiff Jackie Blakey is serving a 35 year sentence and has been housed at JCCC since October of 2005. See Doc. 106, p. 6; Doc. 106-1, p. 6. In October of 2007, plaintiff was put into

2

administrative segregation after getting into a fight with his cellmate. Doc. 106-1, p. 18. There are four phases in administrative segregation, and offenders must work their way up from Phase 0 to Phase 3 before they can return to the general population. See Doc. 106, p. 11; Doc 106-9. At each level, a classification committee determines whether or not an offender can progress to the next level. Doc. 106-1, pp. 10-13. Between October of 2007 and July of 2008, plaintiff repeatedly worked his way up from phase to phase only to be brought back down for committing another conduct violation. See Doc. 106-1.

In July of 2008, plaintiff was in Phase 3. Id. at 25. Phase 3 inmates spend 23 hours a day locked up with their cellmate. Doc. 106, p. 16. Plaintiff and his cellmate got along well but were subject to threats by other inmates which led them to fear for their lives. Doc. 106-1, p. 27. Plaintiff and his cellmate correctly followed the proper procedure to request to be put in Protective Custody (PC) and to declare enemies. Doc. 106, p. 17. Plaintiff named several men as enemies: Lawrence Arnold, Alvin Washington, John Reece, Treven Gamble and Toney Jones (although in October, plaintiff changed his mind and removed Jones's status as an enemy). Doc. 106-1, p. 29. On July 12, 2008, plaintiff was placed in a single man cell. Id. at 31.

In October 2008, while in PC, plaintiff committed a conduct violation when he passed a pouch of tobacco to another inmate. Doc. 106-1, p. 10. Plaintiff originally was sentenced to ten days of cell restriction, but on the tenth day, his sentence was overturned, and instead, he was returned to Phase 1 of administrative segregation. Id. at 32-34. Administrative segregation offers largely the same restrictions as protective custody. Doc. 106, p. 16. At that time, none of the men plaintiff had declared as enemies remained in administrative segregation except Toney Jones, who plaintiff previously had removed from his list of enemies. Id. at 18.

3

To determine housing assignments at JCCC, inmates are evaluated and receive scores based on characteristics and behaviors. See Doc. 106, pp. 9-10; Doc. 106-6. When an inmate is initially incarcerated, he receives an Adult Internal Classification System (AICS) score. Id. Plaintiff was classified as a Kappa. Id. At each level of administrative segregation, the assigned caseworker also looks at an offender's CFI score and current phase level. See Doc. 106, p. 12; Doc. 106-9. Inmates must have identical CFI scores to be housed together in administrative segregation. Id. To determine whether an inmate is an A, B, C, or D, the CFI score considers numerous factors including the inmate's age, length of sentence, release date, reason for being in administrative segregation, and whether they are coming to administrative segregation from the general population or from PC. See Doc. 106, p. 12; Doc. 106-9. Plaintiff was classified as a B. See Doc. 106, p. 12; Doc. 106-21.

By November 13, 2008, plaintiff was promoted to Phase 3, and on December 3, 2008, he was housed with Donnell Brandon, with whom he had compatible AICS and CFI scores. Doc. 106, pp. 12-13. Brandon came from the general population, Housing Unit 1, which generally houses non-aggressive inmates. Id. Shortly before coming to administrative segregation, Brandon had requested PC because he feared for his safety. Doc. 106, pp.13-14. Brandon had received a conduct violation for being in an unauthorized area. Id.

The two men got along well for the first few weeks. See Doc. 106, p. 14; Doc. 106-1, p. 36. Then, on the night of December 15, 2008, between 10:30pm and 11:15pm, plaintiff was attacked by Brandon. See Doc 1, p. 3; Doc. 106, p. 18. Plaintiff had no idea Brandon was going to attack him until it was happening. Doc. 106, p. 14. Plaintiff reported the incident the following day and was taken to the hospital where he was subjected to a rape kit and full examination. See Doc. 1, p. 5; Doc. 106 p. 19; Doc. 113, pp. 10-11 . Plaintiff then was moved to a single man cell. Doc. 106,

4

p. 19.

Plaintiff commenced this action in which he alleges that the July 12, 2008, incident should have placed defendants on notice that he is permanently at risk. Doc. 106, p. 19. At JCCC, there is no such thing as permanent PC status, but an inmate can declare a need to be removed to PC for safety reasons at any time. Doc. 106, pp. 15-16. None of the defendants have ever refused plaintiff the opportunity to declare any of his cellmates as enemies. Doc. 106, pp. 19-28. On December 15, 2008, none of the defendants believed plaintiff faced a serious risk of harm. Id. Plaintiff had not declared Brandon his enemy or alleged there was any threat to his safety. Doc. 106, p. 15. Plaintiff's cell was equipped with an emergency button that silently alerts prison officials of a problem. Doc. 106, p.23. Plaintiff was aware of the emergency button in his cell, and had used the emergency button system previously, but he did not use it in this instance. See Id.; Doc. 106-1, pp. 15-17.

## DUTY TO PROTECT

Under the Eighth Amendment, prison officials have a duty to protect in that they must take "reasonable steps to protect inmates convicted of crimes from assault by other inmates." Schoelch v. Mitchell, 625 F.3d 1041, 1046 (8th Cir. 2010) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). To prove that an official has unconstitutionally breached this duty, a prisoner must prove that (1) objectively, the conditions of his confinement posed a "substantial risk of serious harm" and (2) subjectively, the official was "deliberately indifferent" to the risk. Id. Deliberate indifference is "something more than negligence but less than actual intent to harm." Schoelch, 625 F.3d at 1046 (citing Newman v. Holmes, 122 F.3d 650, 653 (8th Cir. 1997)). It requires the official to know the facts that might lead to the inference of a substantial risk of serious harm and to actually draw that

5

inference. Schoelch, 625 F.3d at 1046 (citing Farmer, 511 U.S. at 837). A surprise attack is not sufficient to show a constitutional violation. Id. at 1048. It is possible for plaintiff Blakey to prevail if he can prove that being housed with Brandon was objectively known to be a substantial risk of serious harm and that each defendant was subjectively aware of this risk and was deliberately indifferent to it.

Although he alleges Brandon was known to have a history of assaulting other inmates, plaintiff has produced no evidence of any incidents or that anyone had reason to believe Brandon was dangerous. Additionally, plaintiff's prior actions indicate that he is aware of and capable of using JCCC's policies and procedures to request protective custody status, to declare an enemy, and to use the emergency button to summon help. Because there is no indication that housing plaintiff with Brandon was likely to cause serious harm to plaintiff, there was no objective substantial risk of serious harm.

As to the defendants, there is no evidence that any of them believed that plaintiff was at risk. Many of them thought the two men would get along well. Furthermore, evidence shows that Brandon's attack was nothing other than a surprise. None of the defendants believed that plaintiff's July 12 incident and resulting PC status implied that plaintiff would be forever at risk, especially regarding inmates who were not on plaintiff's enemy list. None of the defendants acted contrary to JCCC policies and procedures, and some acknowledge that, if they had known of the risk to plaintiff's safety, there would have been protective procedures for them to follow. Because there is no evidence that any of the defendants knew of a serious risk of substantial harm to the plaintiff, it cannot be said that defendants were deliberately indifferent to the risk.

Plaintiff fails to present sufficient evidence to show that any defendant violated his

6

constitutional rights. Therefore, defendants' motion for summary judgment will be granted.

## QUALIFIED IMMUNITY

Additionally, defendants maintain that they are entitled to qualified immunity because their actions did not violate any of plaintiff's clearly established constitutional or statutory rights of which a reasonable person would have known. Doc. No. 106, pp. 38-39. Government officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate a clearly established statutory or constitutional right which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Doby v. Hickerson, 120 F.3d 111, 113 (8th Cir. 1997) (quoting Anderson v. Creighton 483 U.S. 635, 640 (1987)).

The Court uses a two pronged test to determine if a government official is entitled to qualified immunity. See Weiler v. Purkett, 137 F.3d 1047, 1050 (8th Cir. 1998). The first prong of this test is to determine whether or not the plaintiff has alleged a deprivation of a constitutional right. Id. The second prong of this test is to determine if that constitutional right "was so clearly established that a reasonable public official would have known his or her conduct violated the Constitution at the time of the act." Id.

Although plaintiff has alleged a deprivation of a constitutional right, this Court has determined that plaintiff has failed to demonstrate that his constitutional rights were violated. Because the Court finds that defendants' actions did not violate plaintiff's constitutional rights, defendants are entitled to qualified immunity.

## RESPONDEAT SUPERIOR

7

Next, defendants argue that, because they had no personal involvement with the plaintiff's claims, plaintiff fails in alleging a constitutional violation of a subordinate on the basis of respondeat superior. Doc. No. 106, pp. 39-40.

To state a claim under 42 U.S.C. § 1983, plaintiff must allege the deprivation of a constitutional or federally protected right. See Parratt v. Taylor, 451 U.S. 527, 532 (1981). "Liability under [42 U.S.C.] § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing Rizzo v. Goode, 423 U.S. 362, 370-71 (1976)). Plaintiff, therefore, must present specific allegations of fact as to either direct personal involvement, direction of others, or a knowing failure to supervise or act, which resulted in plaintiff's injuries. See generally Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993) (Section 1983 liability requires some personal involvement or responsibility); Ronnei v. Butler, 597 F.2d 564 (8th Cir. 1979). Furthermore, a supervisor's "mere knowledge of his subordinate's" illegal acts is an insufficient basis for Section 1983 liability. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Plaintiff fails to sufficiently plead defendants' direct personal involvement in the alleged breach of duty to protect from cruel and unusual punishment. Prior to the attack, none of the defendants were aware of any threat or risk created by housing plaintiff with Brandon. Plaintiff and Brandon had compatible AICS and CFI scores and were suitable cellmates per JCCC policy. Even if they were not compatible, none of the defendants were personally responsible for assigning them their scores or pairing them up as cellmates. To the extent plaintiff is contending that defendants were involved in the denial of plaintiff's federally protected rights due to any supervisory role, plaintiff is attempting to state a claim under a theory of respondeat superior, which is not actionable

8

under Section 1983. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986); Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 691 (1978). Because plaintiff fails to state an actionable Section 1983 claim, defendants' motion for summary judgment will be granted.

## ELEVENTH AMENDMENT

Finally, defendants argue for Eleventh Amendment immunity for plaintiff's monetary damages against them in their official capacities. Doc. No. 106, p. 40. "The Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens as well as citizens of another state." Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 (8th Cir. 1999). This immunity also applies to state agencies and officials in their official capacity. Bradley v. Arkansas Dept. of Education, 189 F.3d 745, 749 (8th Cir. 1999).

Every action plaintiff alleges against defendants is within the defendants' official capacities, acting under color of state law. Consequently, plaintiff's claims against defendants are barred by the Eleventh Amendment, and defendants' motion for summary judgment for Eleventh Amendment immunity will be granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment as to defendants Cassady, Corum, Dormire, Martin, Martin, Reed, and Woods being deliberately indifferent to plaintiff's substantial risk of serious harm will be granted. Plaintiff's deliberate indifference claims will be dismissed with prejudice as to defendants, and this case will be dismissed with prejudice.

Accordingly, it is **ORDERED** that:

(1) defendants' motion for summary judgment (Doc. No. 106) is granted, and defendants

9

Cassady, Corum, Dormire, Martin, Martin, Reed, and Woods are severed and dismissed from this cause of action with prejudice;

(2) the Clerk of the Court change the name of defendant Jay Cassidy to Jay Cassady;

(3) the Clerk of the Court change the name of defendant Reana Martin to Raina Martin; and

(4) this case is dismissed with prejudice.

        /s/ Fernando J. Gaitan, Jr.
FERNANDO J. GAITAN, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  November 4, 2011  .